Good morning. Thomas Browder on behalf of the appellant. May it please the court. Most sole security cases this court reviews involve what the agency refers to as the residual functional capacity or RFC determination. That includes the one it just heard arguments in. That involves also the step four findings as to whether a claimant with that RFC can perform his or her past work and any other work that exists in the national economy. Well we often get that step five. Yes that's step five. This is not one of those cases. In this case the commissioner's adjudicator denied the appellant's claim at step two finding that she does not have a single severe impairment or a severe combination of impairments that more than minimally impact her ability to work. So I have a question. Is that the record shows that she has fibromyalgia? Yes. And I want to know what the record is going to tell me about the onset date of the fibromyalgia. She applies in 2010 right for her SSI benefits. Yes. So is it your position that we can find evidence in the record that the fibromyalgia is already there as of 2006? What the record reflects is that the claimant began reporting to her treating physicians Dr. Blankenstein and Dr. Rashid several somatic symptoms that are associated with fibromyalgia probably in early 2010 before she actually applied for benefits. Before the application? Yes. Over the course of 2010 and 2011 these doctors documented her repeated manifestation of these somatic symptoms and over the course of 2011 tried to rule out other conditions that were causing these disorders and eventually Dr. Blankenship concluded that she suffers from fibromyalgia. So say a little bit more about the ruling out because one of the things that concerns the ALJ was an alleged lack of doing that. How did that happen? The ALJ actually did not discuss whether other conditions were ruled out. That was the basis for the district court affirming the decision. The district, the ALJ, reasoned that the treating physicians who diagnosed fibromyalgia did not conduct a tender point analysis. That was just option one, right? There are two different options. One is the 1990 American College of Rheumatology criteria. Another is the 2010 American College of Rheumatology criteria. In contrast the 1990 ACR criteria, the 2010 criteria can be satisfied without tender points and with evidence of repeated somatic symptoms. The ALJ did not consider how Dr. Blankenstein and Dr. Rashid's diagnosis of fibromyalgia was consistent with the 2010 criteria for somatic symptoms. Now in regards to the ruling out of other conditions, the record shows that beginning in 2010 Dr. Blankenstein reviewed multiple imaging studies that returned largely normal results. So what was he looking for? Does the record show that? He was looking for, I think, a cause of her widespread pain. She complained of pain. So like nerve compression or disc problems? One of her complaints, sorry, one of her complaints was pain in her neck and in her shoulders and in her upper extremities. So he conducted, he reviewed a CT scan of her neck in early 2010 that was reviewing for degenerative changes. He didn't find any. So you're basically saying that means he's ruling out degenerative changes in the cervical spinal area? Yes. As 2010 and 2011 progress, he notes her complaints of nausea, abdominal pain and cramping, as conditions which returned normal results. He reviews an ultrasound of her abdomen that was performed in the emergency room that he referred to as stone-cold normal in 2011. And again, you know, what might he have found or did he, does he reveal, actually that's the real question, does he indicate what might have been wrong? You know, is he looking for something in particular or just something that doesn't look right to him? Well, it's not a stomach problem because it looks fine. He's looking in some of those laboratory studies. He orders a rheumatoid factor test. This is a test that doctors order to assess for inflammation. Rheumatoid arthritis? Yes. It's evaluating for connective tissue disorders that are associated with an autoimmune disorder. Lupus? Lupus, rheumatoid arthritis, psoriatic arthritis. These kind of conditions typically cause the claimant, one of the claimant's symptoms, fatigue and weakness, as well as widespread pain. Those tests were normal. The complete blood counts that he did to assess for anemia were probably intended to review for some kind of gastrointestinal bleeding disorder that could have caused fatigue or could have caused her abdominal pain. So what the record shows is that Dr. Blankenstein and Dr. Rashid, over the course of two years, were experiencing repeated manifestations of somatic symptoms, ruling out other conditions, and eventually diagnosing fibromyalgia. The state agency consultants who reviewed the claim in early 2011 did not consider evidence of this diagnosis. They did not review the medical evidence showing that other disorders were excluded over the course of time. Why wasn't the file, did they just not ask for it? I don't understand why they didn't get the full file. A lot of this is due to the fact that it applies at the agency, they're evaluated within six months, and a state agency consultant makes a determination, and then when the claimant appeals that determination, additional medical evidence is obtained before the agency's administrative law judge issues a decision, sometimes 18 months later. So in this case, the state agency doctors didn't see a diagnosis of fibromyalgia. The claimants treating physicians ruled out other disorders, which necessarily takes time, and then diagnosed fibromyalgia. The commissioner's adjudicator rejected that diagnosis because there's no examination showing tender points. That rationale is not sufficient in light of the facts of this case and the relevant medical and legal authority. The commissioner effectively concedes that the ALJ didn't evaluate this condition, this diagnosis, under the medical vocational guidelines, and that's enough to remand this case. If the claimant has one medically determinable severe impairment, she's entitled to have her claimant evaluated in light of her RFC, and because she's of advanced age, she would be entitled to a disability under the medical vocational guidelines with the finding that she can only perform light work, and that's consistent with Dr. Rashid's opinion. And with that, I'll save the rest of my time for rebuttal. All right, thank you. So, Ms. Januszczyk. Good morning. May it please the court, Linda Januszczyk on behalf of the Acting Commissioner. This presided issue in this case is whether the ALJ reasonably concluded that Nancy Thomas did not have a severe impairment. Because the ALJ's supported by substantial evidence, may I ask that this court affirm the District Court's judgment. But isn't it a problem that the ALJ never looks at the alternative way of showing fibromyalgia that doesn't require tender points, this 2010 methodology? It's true that the ALJ... Seems like she fits the 2010 methodology, so it's prejudicial. Well, as the District Court found, there was not evidence that other disorders that could have caused those symptoms were excluded. But actually, Mr. Browder has just spent the last five minutes telling us that that is completely wrong, that there's plenty of evidence that there was a rule-out process. There was blood work done in February of 2010 when the doctor said it was tough to say if her symptoms were due, for example, to her Graves disorder. In January 2011, the stone-cold normal abdomen ultrasound, they also were testing her stool to see if she had C. diff following a bacterial infection. Exactly, and so they rule all of that stuff out, and they don't... They look at the 2010 guidance from the Rheumatology, the American College of Rheumatology, whatever they're called, but neither the ALJ nor the District Court does. They're obsessed about tender points. I'm looking at page 6 of the District Court's opinion, and the District Court also seems to think that only a specialist will do, and that's not the case with the Social Security regulations. Dr. Blankenstein isn't a rheumatologist, but the agency will, you know, half the time cart in an obstetrician to, you know, opine on these things. They all have an MD, right? So... Well, the SSR-12-2B does not require a diagnosis from a rheumatologist. And Dr. Blankenstein, although not a rheumatologist, goes through all the steps. He concludes she's got a myofascial pain syndrome, then he narrows it down to fibromyalgia. It's responding to the Lyrica, which is another sign, and he rules out other stuff. I would say that even when he noted that the Lyrica wasn't improving, he said she almost certainly has fibromyalgia, and before that he thought that she most likely suffers from fibromyalgia. In the October 2011 treatment notes, where Dr. Blankenstein noted that a year ago, so in October of 2010, an ANA and rheumatoid factor tests were normal. But even then, he thought that... But rheumatoid factor tests don't show up fibromyalgia. They show up rheumatoid arthritis or other conditions. There is no little magic test for fibromyalgia. No, there's not. But the most probative rule-out testings were done in October of 2010, and even then, at the October of 2011 appointment, Dr. Blankenstein still linked her left shoulder pain possibly to rotator cuff and osteoarthritis combination. But he winds up with fibromyalgia, and I don't see anywhere in the ALJ's decision that acknowledgement, and it is very important for step two, because if we were to think that that was error, obviously there are more steps to go through. You know, there's step three, step four, and conceivably step five, plus an RFC determination, but I'm concerned that the ALJ has actually made a legal error in failing to recognize that there's a different way of showing fibromyalgia. The ALJ did not consider the 2010 ACR criteria for fibromyalgia, but even if fibromyalgia should have been considered as a medically determinable impairment, the ALJ still considered all of Thomas's reported symptoms and limitations. There aren't symptoms that are specific to fibromyalgia that the ALJ didn't consider when reviewing all of the evidence. I don't think that's good enough, because the ALJ, of course, is not a doctor, and if there are two physicians who have said, we've looked at this package of symptoms, and we think they add up to fibromyalgia, and there are two doctors who've said that, then the ALJ has to proceed on that basis. Maybe there's another agency doctor, often there is, who says, you know, I've looked at the same package of symptoms, and I don't think so, but we don't have evidence like that in this record. We do not, but again, even Dr. Fibromyalgia, in her January 2012 opinion that she sent for disability services at a college, the only functional limitation that she noted was an inability to lift more than 20 pounds. But the problem is fibromyalgia is a severe disability, and I think you're jumping ahead in the process. If there is an RFC and she can lift 20 pounds, then maybe the agency shows that she's not entitled to benefits at Step 4 or Step 5, because there are jobs that such a person could do, but it doesn't mean you get to pretermit the whole process. If she has, I mean, in this area in which there is a diagnosis of fibromyalgia that the ALJ doesn't look at. Well, even if she does have a diagnosis of fibromyalgia, that's not the same thing as saying that she necessarily has a severe impairment of fibromyalgia. The ALJ never considers it, because the ALJ is mistaken about how you show fibromyalgia. The ALJ is stuck in 1990, and maybe that was a nice year. I don't know. Would it make sense to remand it for Step 2, for the Step 2 analysis? No, I think it would make sense to affirm the district court's judgment. I would note that Social Security Ruling 12-2P did come out in July of 2012, just a few months before the ALJ issued the decision, so not necessarily stuck in the 90s. Okay, that's fine. Thank you. Thank you very much. Anything further, Mr. Browder? The commissioner makes great pains to qualify Dr. Blankenstein's diagnosis of fibromyalgia, but kind of overlooks that Dr. Rashid also reached this diagnosis, and from what the commissioner argues that this error should be excused because the ALJ still considered the claimant's symptoms associated with fibromyalgia. But the commissioner's policy rulings require that if an ALJ does not find that an impairment is a medically determinable impairment under the regulations, they cannot account for limitations associated with that impairment. And finally, I would point out that the commissioner is arguing that this error is kind of harmless because Dr. Rashid said the claimant can lift 20 pounds. Under the medical vocational guidelines, if she has an RFC where she cannot perform more than light work, which requires her to stand and walk for six hours each day and lift 20 pounds occasionally, if she can perform that work, she's disabled under the medical vocational guidelines. And because of that harm, appellant requests that the court remand the claim to the agency for consideration of her fibromyalgia and her entitlement to disability under the grid rules. Thank you. All right. Thank you. Thanks to both counsel.